Submitted November 25, 2014, affirmed December 2, 2015, petition for review denied May 5, 2016 (359 Or 525)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BRUCE PATRICK ROY,
*Defendant-Appellant.*

Lane County Circuit Court
201215261; A153812

364 P3d 1003

Peter Gartlan, Chief Defender, and Andrew D. Robinson, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Jamie K. Contreras, Assistant Attorney General, filed the brief for respondent.

Before Lagesen, Presiding Judge, and Duncan, Judge, and Flynn, Judge.

LAGESEN, P. J.

**LAGESEN, P. J.**

Defendant appeals a judgment convicting him of first-degree burglary, coercion, menacing, and second-degree criminal mischief. On appeal, he challenges only his burglary conviction, assigning error to the trial court's failure to provide the jury with a concurrence instruction, telling it that at least 10 jurors had to agree on the specific crime or crimes that defendant intended to commit when he entered into the dwelling that he was alleged to have burglarized. Defendant acknowledges that the assigned error is not preserved. He argues that it qualifies as plain error, and requests that we exercise our discretion under ORAP 5.45(1) to consider and correct it. We decline to do so and, accordingly, affirm.

Defendant's convictions arose out of his efforts to reconcile with his long-term girlfriend. The pair's relationship was tumultuous, and a few days before the incident giving rise to the charges, defendant's girlfriend had moved into a friend's house in order to "have a safe place where [she] could collect [her]self and not be under [defendant's] control anymore." The day of the incident, defendant drove his motor home over to the house where his girlfriend was staying and parked it on the lawn. When no one would let him into the house, defendant broke the glass on the front door with a propane tank. Defendant's girlfriend opened the door to try to talk with him. When his girlfriend opened the door, defendant forced his way into the house and began to verbally threaten the friend. Defendant then ordered his girlfriend to "get [her] stuff and get in the RV." She "just [did] what he told [her]" because she "knew better than to— when he's in that aggravated state, not to say anything." Defendant remained in the house and continued to yell at the friend. Eventually, the police arrived and arrested defendant.

Defendant was charged with first-degree burglary, ORS 164.225; coercion, ORS 163.275; menacing, ORS 163.190; driving under the influence of intoxicants, ORS 813.010; and second-degree criminal mischief, ORS 164.354. The burglary charge alleged that defendant had committed the burglary by unlawfully entering or remaining in the

friend's house with the intent to commit the crime of coercion. The charge also alleged two sentencing enhancement factors under OAR 213-018-0025—that the house targeted in the burglary was occupied, and that defendant had caused or threatened to cause physical injury.[1] Specifically, Count 1 of the indictment alleged:

"The defendant, on or about July 21, 2012, in Lane County, Oregon, did unlawfully and knowingly enter or remain in an occupied dwelling * * * with the intent to commit the crime of coercion therein;

"The State further alleges that during the course of the foregoing crime the defendant caused, threatened and attempted to cause physical injury to the victim[.]"

In preparing the jury instructions, the trial court misunderstood the allegations in Count 1. It mistook the sentencing enhancement factor about causing or threatening physical injury to be an alternative theory of how defendant committed the burglary: "I note that in the Burg 1 there were two different ways in which * * * the Burg 1 would have been committed, by coercion and then by threat of harm to another person, I think is how the allegation * * * reads." The state responded that that allegation was "ultimately * * * a menacing theory." The court stated that it would include "coercion and menacing" in the instruction on the elements of burglary. After both parties confirmed that there was nothing else that the court needed to address with respect to jury instructions, the court recessed to modify the burglary instruction, as well as another instruction that the parties had discussed.

After the recess, the court provided a copy of the instruction to the parties and explained the changes that the court had made to it: "I added menacing in the Burg 1

---

[1] OAR 213-018-0025 establishes the crime category rankings for first-degree burglary. Under it, first-degree burglary is ranked at Crime Category 9 if the offender was armed with a deadly weapon or "caused or threatened physical injury to the victim." OAR 213-018-0025(1). A first-degree burglary is ranked at Crime Category 8 if the offense did not involve a deadly weapon and actual or threatened physical injury, but did involve an occupied dwelling. OAR 213-018-0025(2). Otherwise, first-degree burglary is ranked at Crime Category 7. OAR 213-018-0025(3).

element, the last element." As modified, the instruction stated:

> "Oregon law provides that a person commits the crime of burglary in the first degree if the person enters or remains unlawfully in a dwelling with the intent to commit a crime therein.
>
> "In this case, to establish the crime of burglary in the first degree, the state must prove beyond a reasonable doubt the following five elements:
>
> "(1)   The act occurred in Lane County, Oregon;
>
> "(2)   The act occurred on or about July 21, 2012;
>
> "(3)   [Defendant] entered or remained unlawfully and knowingly at [the premises at issue];
>
> "(4)   The premises * * * is a dwelling; and
>
> "(5)   At the time of entering or remaining unlawfully, [defendant] had the intent to commit the crime of *Coercion or Menacing* therein."

(Emphasis added.)

After providing the instruction to the parties, the court asked defendant whether there "was * * * something [he] wanted to bring to [the court's] attention?" Defendant responded, "No. We're fine." As a result, the jury received the trial court's modified instruction on burglary telling it that it could convict defendant of burglary if it found that he unlawfully entered or remained at his girlfriend's friend's house, with the intent to commit either the crime of coercion or the crime of menacing, although the indictment had not charged the burglary in that way. Neither defendant nor the state requested a concurrence instruction telling the jury that at least ten jurors had to agree on which crime, or crimes, defendant intended to commit upon his unlawful entry or remaining, and the trial court did not provide one on its own. The jury convicted defendant of burglary, coercion, menacing, and criminal mischief, but acquitted him of driving under the influence of intoxicants. The verdicts on the charges of burglary and criminal mischief were unanimous; the verdict on the coercion charge was 11-1, and the verdict on the menacing charge was 10-2.

As noted, defendant assigns error to the trial court's failure to provide a concurrence instruction informing the jury that at least 10 jurors had to agree as to the specific crime that defendant intended to commit at the time that he unlawfully entered or remained in the house. Defendant acknowledges that the assigned error is not preserved, but argues that our decision in *State v. Frey*, 248 Or App 1, 273 P3d 143 (2012), *rev den*, 354 Or 814 (2014), makes it plainly erroneous for the trial court to have not, on its own, provided a concurrence instruction. In *Frey*, we recognized "that the state, to convict of burglary, must plead and prove the specific crime that the defendant intended to commit upon entry." *Id.* at 9. As a consequence of that requirement, where the state predicates a burglary charge on allegations that the defendant intended to commit several different specific crimes upon an unlawful entry or remaining, a trial court errs when it declines to give a requested jury instruction telling the jury that at least 10 jurors must concur as to the specific crime (or crimes) that the defendant intended to commit. *See id*;[2] *see also State v. Phillips*, 354 Or 598, 606, 317 P3d 236 (2013) (where criminal liability is predicated on alternative theories of liability involving distinct, legislatively defined elements, "and if a party requests an appropriate instruction, the trial court should instruct the jury that at least 10 jurors must agree on each legislatively defined element necessary to find the defendant liable under one theory or the other"). Defendant urges us to exercise our discretion under ORAP 5.45(1) and *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 380-81, 823 P2d 956 (1991), to consider and correct the trial court's alleged error in failing to deliver a concurrence instruction.

We assume without deciding that a trial court's failure to deliver a concurrence instruction absent a request from a party could constitute plain error. We must then confront whether the circumstances of this case warrant our exercise

---

[2] In *Frey*, the defendant was charged with attempted first-degree burglary, rather than completed first-degree burglary. However, that the crime at issue was an attempt crime, rather than a completed crime, was immaterial to our conclusion that the burglary statutes require the state to prove the specific crime or crimes that the defendant intended to commit in connection with an unlawful entering or remaining.

of discretion to consider and correct that alleged error. *Ailes* counsels that we exercise that discretion with "utmost caution." *Id.* at 382. In making that cautious determination, we take into account, among other things, defendant's role, if any, in encouraging the error, and "the ends of justice in the particular case." *Id.* at 382 n 6; *State v. Hodges*, 269 Or App 568, 575-76, 345 P3d 516, *rev den*, 357 Or 595 (2015). Here, those two considerations persuade us not to exercise our discretion to consider and correct the alleged error.

First, defendant played a significant part in bringing about the alleged error. He acquiesced in the trial court's mistaken modification of the jury instruction on burglary. That invited the trial court to instruct the jury—erroneously, given the indictment—that it could convict defendant of burglary if it found that he had the intent to commit "coercion or menacing." *See Clay/Luttrell v. Pay Less Drug Stores*, 276 Or 673, 556 P2d 125, (1976) (where party indicated that trial court's modification of jury instruction was acceptable, party invited any error in the delivery of the instruction). But for that initial error, the trial court's omission of a concurrence instruction could not be error at all. If the jury had been instructed on the charge of burglary as it was alleged in the indictment—that defendant intended to commit the crime of coercion upon his unlawful entering or remaining—then there would have been no grounds for a concurrence instruction, and no possible error in omitting one.

Second, we are not convinced that the circumstances of this case are such that the "ends of justice" require us to overlook "the strong policies requiring preservation." *Ailes*, 312 Or at 382, 382 n 6. The state's case against defendant on the burglary charge was straightforward. Its specific theory on the burglary, which it repeated to the jury several times, was that defendant's intent upon entering the house was to compel or induce his girlfriend to leave with him and, therefore, defendant had the intent to commit the crime of coercion upon his unlawful entry.[3] We acknowledge that the

---

[3] For example, the state argued that "[defendant] entered the residence with the intent to compel or induce her to leave with him. That's burglary." It further argued, "[w]hat was his intent of going there to begin with? To go take his woman back. That's the coercion. That's the coercion crime that we're talking about. He's going to leave with her."

court's mistaken jury instruction on burglary and the state's repetition of that instruction in closing arguments, in tandem with the omission of a concurrence instruction, make it possible that an insufficient number of jurors concurred as to what crime or crimes defendant had the intention to commit upon his unlawful entry. However, given how the burglary charge was presented to the jury, and given that the jury ultimately returned an 11-1 verdict against defendant on the charge of coercion, we are not persuaded that it is so likely that a sufficient number of jurors failed to reach the requisite concurrence that enforcement of "the strong policies requiring preservation" would be unjust in these circumstances.

Affirmed.